**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| BLAINE CISNEROS and DEMETRIUS DOLLARHIDE, Individually and for Others Similarly Situated<br><br>v.<br><br>VIKING ENTERPRISES, INC. d/b/a CITY AMBULANCE SERVICE | **Case No. ________________**<br><br>Jury Trial Demanded<br><br>FLSA Collective Action |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Blaine Cisneros (Cisneros) and Demetrius Dollarhide (Dollarhide) (collectively Plaintiffs) bring this collective action to recover unpaid wages and other damages from Viking Enterprises, Inc. d/b/a City Ambulance Service (Viking).

2. Viking employed Plaintiffs as its Hourly Employees (defined below).

3. Plaintiffs and the other Hourly Employees regularly work more than 40 hours in a workweek.

4. But Viking does not pay them at least 1.5 times their regular rates of pay—based on all remuneration—for all hours in excess of 40 each workweek.

5. Instead, Viking requires Plaintiffs and the other Hourly employees to perform work such as attending meetings, responding to calls, completing paperwork, coordinating ambulances, and other regular job duties "off the clock" and without compensation. (Viking's "off the clock work policy").

6. Viking likewise deducts approximately 2 hours from Plaintiffs and the other Hourly Employees for "naps," during 24-hour shifts working at Viking's facilities (Viking's "sleep deduction policy").

7. But Plaintiffs and the other Hourly Employees are required to remain on call and on duty during these "naps," and they are frequently interrupted by work duties, such as calls.

8. Viking also pays Plaintiffs and the other Hourly Employees non-discretionary bonuses that it fails to include in these employees' regular rates of pay for overtime purposes (Viking's "bonus pay scheme").

9. Viking's off the clock work policy, sleep deduction policy, and bonus pay scheme violate the Fair Labor Standards Act (FLSA) by failing to compensate Plaintiffs and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. This Court has general personal jurisdiction over Viking because it is a Texas corporation.

12. Venue is proper because Viking maintains its principal place of business in Spring, Texas, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

13. Viking employed Cisneros as a paramedic from approximately June 2021 through February 2024.

14. Viking employed Dollarhide as a paramedic from approximately April 2020 through May 2024.

15. Throughout their employment, Viking subjected Plaintiffs to its off the clock work policy, sleep deduction policy, and bonus pay scheme.

16. Cisneros's written consent is attached as **Exhibit 1**.

17. Dollarhide's written consent is attached as **Exhibit 2**.

18. Plaintiffs bring this collective action on behalf of themselves and other Viking employees it employed subject to its off the clock work policy, sleep deduction policy, and/or bonus pay scheme.

19. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Viking paramedics and EMTs from September 19, 2022[1] through final resolution of this action (the "Hourly Employees").**

20. Viking is a Texas corporation headquartered in Spring, Texas.

21. Viking may be served with process through its registered agent: **Moe Massoud, 7111 Five Forks Drive, Spring, Texas 77379**, or wherever he may be found.

**FLSA COVERAGE**

22. At all relevant times, Viking was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

23. At all relevant times, Viking was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

24. At all relevant times, Viking was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling,

---

[1] Plaintiffs demanded arbitration on September 19, 2025 through the American Arbitration Association (AAA) as required by Vikings arbitration agreements it forced Plaintiffs to sign as a condition of employment with Viking. Viking, however, failed to comply with its own arbitration agreements that it forced on Plaintiffs by failing to pay AAA's initial filing fees, which resulted in AAA dismissing the arbitration claims. Therefore, this action relates back to the September 19, 2025 arbitration demand date.

or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

25. At all relevant times, Viking had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

26. At all relevant times, Plaintiffs and the other Hourly Employees were Viking's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

27. At all relevant times, Plaintiffs and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

28. Viking touts itself as "[l]eading the way in Texas healthcare transportation since 2006 . . . cater[ing] to the needs of Surgical Hospitals, Hospital Emergency Departments, Behavioral Health Hospitals, Free-Standing Emergency Centers."[2]

29. To meet its business objectives, Viking employs workers, including Plaintiffs and the other Hourly Employees, to transport and care for patients.

30. For example, Viking employed Plaintiffs as paramedics in Texas.

31. Their primary job duties included responding to emergency calls, evaluating patients, providing emergency medical care, transporting patients to medical facilities, in accordance with Viking's policies, procedures, and expectations.

32. Throughout their employment, Plaintiffs regularly worked more than 40 hours a workweek.

33. Indeed, Plaintiffs typically worked approximately 3 to 5 24-hour shifts each week (72 to 120 hours a workweek).

---

[2] https://cityambu.com/about-us/ (last visited February 11, 2026).

34. Viking paid Dollarhide approximately $27.50 an hour.

35. Viking paid Cisneros approximately $30 an hour.

36. Likewise, the other Hourly Employees typically work approximately 3 to 5 24-hour shifts each week (72 to 120 hours a workweek).

37. And Plaintiffs and the other Hourly Employees are required to report their "on the clock" hours through Viking's timekeeping system.

38. But Viking does not pay Plaintiffs and the other Hourly Employees for all the hours they work.

39. Instead, Viking subjects them to its off the clock work policy.

40. Specifically, Viking requires them to perform their regular job duties, such as attending meetings, responding to critical care calls, completing paperwork, and other regular job duties "off the clock," including on their days "off," without compensation.

41. Plaintiffs and the other Hourly Employees must complete this work on their days "off" in order to timely comply with Vikings policies, procedures, and expectations.

42. Plaintiffs and the other Hourly Employees could not complete their jobs in accordance with Viking's policies, procedures, and expectations without performing this "off the clock" work.

43. This "off the clock" work is thus an essential aspect of their jobs as paramedics and EMTs.

44. Indeed this "off the clock" work regularly takes Plaintiffs and the other Hourly Employees 8+ hours to complete each workweek.

45. Viking's off the clock work policy thus violates the FLSA by depriving Plaintiffs and the other Hourly Employees of wages, including overtime wages during workweeks in which they work in excess of 40 hours.

46. Likewise, Viking subjects Plaintiffs and the other Hourly Employees to its sleep deduction policy.

47. Specifically, Viking deducts 2 hours from Plaintiffs and the other Hourly Employees for "naps."

48. However, Plaintiffs and the other Hourly Employees are required to remain on Viking's premises, remain on call, monitor phones and pagers for calls that come in, and respond to calls that occur during their "safety naps."

49. Thus, Plaintiffs and the other Hourly Employees spend their "nap" time working on behalf of Viking, on its premises, and for its primary benefit.

50. Viking deducts at least 2 hours from Plaintiffs and the other Hourly Employees regardless of whether their "nap(s)" is on duty and/or interrupted.

51. Viking simply assumes that Plaintiffs and the other Hourly Employees receive a *bona fide*, uninterrupted 2 hours of sleep time during their "nap(s)" each shift.

52. Thus, Viking does not pay Plaintiffs and the other Hourly Employees for this time.

53. Plaintiffs and the other Hourly Employees did not agree to the deduction of any "sleep time" from their hours.

54. Viking's sleep deduction policy violates the FLSA by depriving Plaintiffs and the other Hourly Employees of wages, including overtime wages, for all hours worked during their 24-hour shifts. *See*, 29 C.F.R. § 785.22.

55. And Viking does not pay Plaintiffs and the other Hourly Employees at the required premium overtime rate for all hours worked in excess of 40 in a workweek.

56. Instead, Viking pays Plaintiffs and the other Hourly Employees under its bonus pay scheme.

57. Specifically, Viking agrees to pay and subsequently pays Plaintiffs and the other Hourly Employees non-discretionary bonuses, including training bonuses it labels as "stipends" and additional wages it labels "commissions," based on fulfillment of Viking's criteria.

58. But Viking excludes these non-discretionary bonuses from these employees' regular rates of pay for overtime purposes.

59. For example, during the pay period ending December 23, 2023, Viking paid Cisneros a $250 "Stipend" and $500 "Bonus," but excluded this remuneration from his regular rate of pay:

| PAY | Hours | Rate | Current | YTD |
|---|---|---|---|---|
| Hourly Pay | 80.0 | | 0.0 | 0.0 |
| P.T.O. | | 0.0 | 0.0 | 1150.49 |
| Stipend | | | 250.0 | 6500.0 |
| Overtime Pay | 36.59 | | 0.0 | 0.0 |
| Bonus | | 500.0 | 500.0 | 6800.0 |
| Pay | | | 3067.04 | 160121.41 |

60. Thus, under its bonus pay scheme, Viking does not pay Plaintiffs and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 a workweek.

## Collective Action Allegations

61. Plaintiffs bring their claims as a collective action under Section 216(b) of the FLSA on behalf of themselves and the other Hourly Employees.

62. Like Plaintiffs, the other Hourly Employees are victimized by Viking's off the clock work policy, sleep deduction policy, and bonus pay scheme.

63. Other Hourly Employees worked with Plaintiffs and indicated they worked under the same or similar policies and were paid in the same manner under Viking's off the clock work policy, sleep deduction policy, and bonus pay scheme.

64. Based on their experience with Viking, Plaintiffs are aware Viking's off the clock work policy, sleep deduction policy, and bonus pay scheme were imposed on other Hourly Employees.

65. The Hourly Employees are similarly situated in the most relevant respects.

66. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required rates—based on all remuneration—for all overtime hours worked.

67. Therefore, the specific job titles or locations of the Hourly Employees do not prevent collective treatment.

68. Rather, Viking's off the clock work policy, sleep deduction policy, and bonus pay scheme render Plaintiffs and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rates—based on all remuneration—for all hours worked in excess of 40 a workweek.

69. Viking's records reflect the number of hours the Hourly Employees recorded working "on the clock" each week.

70. Viking's records also show it deducted hours for "naps," failed to pay Plaintiffs and the Hourly Employees for work performed on "days off," and paid Plaintiffs and the other Hourly Employees non-discretionary bonuses it excluded from their regular rates of pay for overtime purposes.

71. The back wages owed to Plaintiffs and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

72. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Viking's records, and there is no detraction from the common nucleus of liability facts.

73. Therefore, the issue of damages does not preclude collective treatment.

74. Plaintiffs' experiences are typical of the experiences of the other Hourly Employees.

75. Plaintiffs have no interest contrary to, or in conflict with, the other Hourly Employees that would prevent collective treatment.

76. Like each Hourly Employee, Plaintiffs have an interest in obtaining the unpaid wages owed under federal law.

77. Plaintiffs and their counsel will fairly and adequately protect the interests of the Hourly Employees.

78. Plaintiffs retained counsel with significant experience handling complex collective action litigation.

79. Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and Viking will reap the unjust benefits of violating the FLSA.

80. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

81. Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Viking.

82. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

83. The questions of law and fact that are common to each Hourly predominate over any questions affecting solely the individual members.

84. Among the common questions of law and fact are:

a. Whether Viking failed to compensate the Hourly Employees for compensable work performed on their days "off";

b. Whether Viking deducted approximately 2 hours from the Hourly Employees for "naps";

c. Whether the Hourly Employees performed compensable work during their "naps";

d. Whether Viking paid the Hourly Employees non-discretionary bonuses;

e. Whether Viking failed to include non-discretionary bonuses in calculating the Hourly Employees' regular rates of pay;

f. Whether Viking failed to pay the Hourly Employees overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked;

g. Whether Viking's decision not to pay the Hourly Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked was made in good faith; and

h. Whether Viking's violations were willful.

85. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

86. The Hourly Employees are known to Viking, are readily identifiable, and can be located through Viking's business and personnel records.

## VIKING'S VIOLATIONS WERE WILLFUL

87. Viking knew it employed Plaintiffs and the other Hourly Employees.

88. Viking knew it was subject to the FLSA's overtime provisions.

89. Viking knew the FLSA required it to pay non-exempt employees, including Plaintiffs and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek.

90. Viking knew Plaintiffs and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours via Viking's timekeeping system.

91. Viking knew Plaintiffs and the other Hourly Employees were non-exempt employees entitled to overtime pay.

92. Viking knew Plaintiffs and the other Hourly Employees performed their normal job duties on their days "off."

93. Viking knew it failed to compensate them for this compensable work.

94. Viking knew it deducted approximately 2 hours from Plaintiffs and the other Hourly Employees for "naps" during 24-hour shifts.

95. And Viking knew Plaintiffs and the other Hourly Employees did not receive even a *bona fide* 2 hours of sleep time.

96. Rather Viking knew Plaintiffs and the other Hourly Employees were required to remain on duty for Viking's predominant benefit and respond to emergency calls throughout their 24-hour shifts.

97. And Viking indeed knew Plaintiffs' and the other Hourly Employees' "naps" were regularly interrupted responding to calls and other job duties.

98. Viking knew it paid Plaintiffs and the other Hourly Employees non-discretionary bonuses.

99. Viking knew these non-discretionary bonuses were not included in Plaintiffs' and the other Hourly Employees' regular rates of pay for overtime purposes.

100. And Viking knew the FLSA requires it to pay Plaintiffs and the other Hourly Employees at least 1.5 times their regular rates of pay—based on *all* remuneration—for all hours worked in excess of 40 a workweek.

101. Viking's failure to pay Plaintiffs and the other Hourly Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

102. Indeed, Viking has been sued numerous times for FLSA violations, including for the same or similar violations alleged in this Complaint. *See e.g.*, *D'Souza v. Viking Enterprises Inc. d/b/a City Ambulance Service, et al.*, 4:23-cv-01837 (S.D. Tex.); *Ream v. Viking Enterprises, Inc. d/b/a City Ambulance Services, et al.*, 5:21-cv-00037 (W.D. Tex.); *Angerstein v. Viking Enterprises, Inc. d/b/a City Ambulance Services, et al.*, 5:20-cv-01413 (W.D. Tex.).

103. Viking knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme that deprived Plaintiffs and the other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA.

## <u>Cause of Action</u>

## Failure to Pay Overtime Under the FLSA (FLSA Collective)

104. Plaintiffs bring their FLSA claim as a collective action on behalf of themselves and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

105. Viking violated, and is violating, the FLSA by employing non-exempt employees, such as the Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for hours in excess of 40 in a workweek.

106. Viking's unlawful conduct harmed the Hourly Employees by depriving them of the overtime wages they are owed.

107. Accordingly, Viking owes the Hourly Employees the difference between the wages actually paid and the required overtime wages actually earned.

108. Because Viking knew or showed reckless disregard for whether its actions violated the FLSA, Viking owes the Hourly Employees these wages for at least the past 3 years.

109. Viking is also liable to the Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

110. Finally, the Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

111. Plaintiffs demand a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs, individually and on behalf of the other Hourly Employees, seek the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b. An Order finding Viking liable to the Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

c. A Judgment against Viking awarding the Hourly Employees all their unpaid overtime wages, liquidated damages, and any other penalties available under the FLSA;

d. An Order awarding attorneys' fees, costs, and expenses;

e. An Order awarding pre- and post-judgement interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Dated: February 11, 2026

Respectfully submitted,

**JOSEPHSON DUNLAP, LLP**

By: */s/ Michael A. Josephson*
Michael A. Josephson
Fed ID No. 27157
TX Bar No. 24014780
Andrew W. Dunlap
Fed ID No. 1093163
TX Bar No. 24078444
Olivia R. Beale
TX Bar No. 24122166
Fed ID No. 3735892
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
obeale@mybackwages.com

Richard J. (Rex) Burch
Fed ID No. 21615
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFFS & THE HOURLY EMPLOYEES**